**WALL & BEAVER STREET CORPORA-
TION et al. v. MUNSON LINE, Inc.**
No. 1954.

District Court, D. Maryland.

July 21, 1943.

See, also, 58 F.Supp. 109.

Brune & Gordon, of Baltimore, Md., and Scribner & Miller, of New York City, for plaintiff.

R. Dorsey Watkins and Piper, Watkins & Avirett, all of Baltimore, Md., for defendant.

CHESNUT, District Judge.

On the defendant's motion to dismiss the complaint in the above case, after hearing counsel and study of the briefs submitted, I have reached the conclusion that the motion must be granted. I will state the principal reasons therefor in this opinion.

The general nature of the case is a bill in equity by three minority junior stockholders to obtain a complete liquidation of the defendant corporation and the division pro rata of the assets among its various stockholders according to their rights and equities, or "in the alternative that this court will require the defendant to reduce the number of shares of stock outstanding by the number of shares of stock held by the pláintiffs, and pay to the plaintiffs the share of their assets in accordance with their rights and equities." The only defendant is the Maryland corporation. Ordinarily a court of equity does not have, in the absence of a statute, the power to liquidate a corporation which, as in the instant case, is entirely solvent, or to require the corporation to redeem a portion of its stock, in the absence of charter or statutory power therefor. This is the well established substantive Maryland law. The question therefore on the motion to dismiss is whether the allegations of the complaint state such an extraordinary case as justifies prima facie the relief requested.

In general the substance of the complaint is that it alleges that the president of the corporation, as the owner of a majority of the first preferred stock, with the aid of proxies from other stockholders, is using the controlling power in the affairs of the corporation thus acquired for personal and selfish purposes to the alleged detriment of

the plaintiffs who are holders of about 15% in amount of a junior preferred stock.

Attention is called to rule 8(a) of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides that "A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a *short* and *plain* statement of the grounds upon which the court's jurisdiction depends * * *; (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled." And rule 9(b) provides: "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The complaint in this case contains 15 closely typewritten pages and numerous charges of fraud by the said president of the corporation, but mostly without particularity of statement with regard to the latter that is required by the rule. Many of the averments of fact in the complaint, while tending generally to show selfish mismanagement by the president of the corporation, are really *irrelevant* to the *particular relief* that is asked. The result is that on reading the lengthy complaint it is difficult to separate the relevant from the irrelevant averments. This failure to comply with the rules would perhaps justify the dismissal of the complaint in its present form, but with permission for an amendment to comply with the rules, if the substance of the relevant allegations were sufficient prima facie to justify the relief asked.

In ruling on the motion it is also to be borne in mind that if in substance the complaint states a case justifying any relief within the power of the court, the motion should be overruled. It is therefore necessary to analyze the averments of the complaint, but they must be read in connection with the background affecting the history of the defendant as shown in the plan of reorganization of its predecessor and the certificate of incorporation of the present corporate defendant. Both of these documents are annexed to the complaint and are complex legal documents requiring careful study and analysis in order to determine whether the averments of fact in the complaint justify the relief asked.

It appears from the plan of bankruptcy reorganization (under section 77B, 11 U.S. C.A. § 207) that the corporate predecessor was the Munson Steamship Line, incorporated under the laws of New York. For many years it had been engaged in a general steamship cargo carrying business. It owned about nine steamships, but for some years prior to 1934 its business had been financially unsuccessful and in that year it applied for reorganization in the District Court for the Southern District of New York. The reorganization plan states the very complicated legal and financial situation affecting the defendant and the numerous conflicting liens and obligations affecting its property. The plan provided that a new corporation should be formed to be known as the Munson Line, Inc., and provided what its capitalization should be and on what basis its several classes of new stock should be issued to creditors of the old corporation. It is particularly to be noted that four classes of new stock were provided for, three of preferred and one of common. All the new stock was to be without par value, but Class A stock was to be entitled to preferential dividends at the rate of $4 per year and on liquidation to receive $25 per share prior to subordinate classes of stock. Similarly Class B and Class C preferred stocks were entitled to their respective preferences in their order over the common stock. The plan contemplated the issuance of approximately 18,000 shares of Class A preferred stock, 2,000 shares of Class B preferred stock and 70,000 shares of Class C preferred stock and 70,000 shares of common stock.

For this case it is especially important to note with regard to Class A that "it will not be redeemable by the Company" and "so long as any preferred stock Class A shall be outstanding, the Company shall not redeem or purchase any of its preferred stock 'Class C' or common stock unless the book value of the net assets (applicable to the stock of the new Company) remaining after such redemption or purchase shall be at least equal to $1,000,000." And it was also provided that "so long as any preferred stock (Class B) shall be outstanding, the Company shall not redeem or purchase any of its preferred stock (Class C) or common stock". Dividends on Class A stock were to be noncumulative for two years (until 1941). Thereafter upon default in any quarterly yearly dividend payable on Class A preferred stock "the hold-

ers of this class, voting as a class, shall be entitled to elect 60% of the members of the board of directors;" and in that event the remaining members of the board were to be elected by the holders of preferred stock Class B and preferred stock Class C voting together as one class, the holders of common stock to have no vote in that case.

The new corporation was duly incorporated by certificate of incorporation under the laws of the State of Maryland, filed with and approved by the State Tax Commission of Maryland on February 4, 1939. It also is an elaborate document containing the provisions with respect to Class A and other stocks provided for in the plan of reorganization. And it is to be particularly noted that in Article Fifth (10) it was specially provided: "and further provided, that so long as 5,000 shares or more of the preferred stock (Class A) are outstanding, dissolution of the corporation shall not be authorized without the affirmative vote of the holders of the majority of the shares of preferred stock (Class A) outstanding, and entitled to vote thereon." The reason for this highly special and quite unusual charter provision with respect to the rights of Class A preferred stock seems to be explained by the provision of the plan of reorganization, particularly Art. IV(A) (c) which provided that Class A preferred stock should be issued to holders of 6% secured gold bonds secured by mortgage and deed of trust, dated January 1, 1939, to the Guaranty Trust Company of New York, on the basis of $300 in cash, 4 shares of preferred stock, Class A, 6 shares of preferred stock, Class C, and 6 shares of common stock, for each $1,000 principal amount of such claims, in full discharge of both principal and interest of such claims. It will be remembered that on liquidation of the corporation the Class A preferred stock was entitled to receive only $25 per share plus accrued and unpaid dividends, in preference to junior securities; but Class A preferred stock was entitled to a preference in dividends of $4 per year cumulative after March 1, 1941. The holder of a $1,000 bond therefore received (in part) $300 in cash, and 4 shares of Class A preferred stock, presumably worth on the basis of preferential dividends about $100 per share but entitled to only $25 per share *upon liquidation* in preference to junior securities. There was further provision as to voting rights that when dividends were not in default each share of stock irrespective of its class was entitled to one vote, with the exception, however, that for certain purposes Class A preferred stock was entitled to 4 votes per share, in voting for directors. Presumably therefore the limitation on the right of stockholders of the several classes to require a liquidation of the corporation by dissolution, was limited by the veto power of a majority of the outstanding Class A preferred stock, in order to protect it from the destruction of its valuable rights of seniority and value flowing from its preferential dividend rate of $4 per share. This is an important feature affecting the relevancy of many of the allegations of the complaint with respect to the relief prayed for.

Turning now to the principal averments of the complaint, we find that the jurisdiction of this court is based only on diverse citizenship, the plaintiff stockholders being citizens of New York and the defendant a Maryland corporation. The several plaintiffs jointly own about 10,000 shares of preferred stock Class C, and an equal amount of common stock. They own no Class A or Class B preferred stock. Prior to June 1939 Harry O. King, the present president of the defendant corporation, purchased a majority of the Class A preferred stock and now holds and owns or controls either directly or in connection with members of his family, about 12,000 shares of Class A, 172 shares of Class B, 27,432 shares of Class C preferred stocks, and 27,600 shares of common stock, much less than a voting majority of any class of stock but the Class A preferred.

The complaint further shows that the plan of reorganization contemplated reorganization as opposed to liquidation, for one reason to preserve the good will of the Munson Steamship Line, which was said to be extensive; but after the reorganization became effective in 1938 the operations of the Company for about a year thereafter continued to show a substantial loss (about $80,000) and the then president, Carlos P. Munson, resigned because the corporation was unwilling to expand its business in accordance with his recommendation. Thereupon King was elected the new president of the corporation and wrote a letter to the stockholders soliciting their proxies in which he recommended selling the remaining assets and investing the cash so that it would produce income sufficient to pay the dividends on the Class

A stock, and it was hoped the investment would increase in capital value. In this connection it is to be noted that the charter powers of the new corporation after providing for carrying on the shipping business and related activities, also in Art. III(9) (10) (11) authorized investments and dealing in personal property generally including the purchase, ownership and the holding for investment of stocks, bonds and other securities.

The complaint alleges that King's letter "enclosed proxies, which were also solicited by a person employed by said defendant for that purpose, and who made reckless and fraudulent statements to secure such proxies." The complaint does not state what misstatements were so made.

The complaint then alleges that as a result of the letter and solicitation King obtained sufficient proxies in addition to his own and family held stock, so that a majority of the stockholders voted for the plan of abandoning the shipping business and authorized the board of the defendant in its discretion to invest in "special situations as defined." Accordingly the defendant in 1940 sold its remaining ships and gave up the shipping business entirely. In this connection it was stated by counsel for the defendant at the hearing, and not denied by counsel for the plaintiffs, that about this time a petition was presented to District Judge Coxe in the Southern District of New York (who had finally approved the reorganization) by some of the present plaintiffs to liquidate the new corporation by reason of the abandonment of the shipping business and the proposal to engage in the investment business; but this petition was dismissed without opinion.

The plaintiffs then further allege that the corporation under King's administration, with a sympathetic board of directors, has made unwise and unsound investments in some particulars, and especially has invested over a million dollars or 62% of the total assets of the defendant company of $1,665,519.77 (as of December 31, 1941), in 54% of the stock of the Brockway Motor Co., Inc., and that King, by virtue of this controlling interest in the Brockway Motor Company (a builder of motor trucks), has had himself elected an officer of the Brockway Motor Co., at a salary, the amount of which is not stated, nor is it stated what services King performs to earn the salary. This and other investments so made by the corporation are alleged to have been the result of poor judgment and are speculative and some of them will probably cause loss to the corporation. *But there is no averment of anything like insolvency of the corporation.*

The complaint further alleges that the dividends on preferred stock Classes A, B and C became cumulative from March 1, 1941, and "at the time of the annual stockholders meetings held in April 1942 and April 1943, the first quarterly dividend of the defendant, which is payable on March 1, should already have been paid." But in each year the dividend was "wrongfully" not paid so that the holders of preferred stock Class A, a majority of which is held by the King group, could surely control the defendant's board. But in June 1942 a dividend of $2 per share was paid on the preferred stock Class A, and another $2 dividend was paid thereon in December 1942. "In connection with the annual meeting of 1943 (held April 20) Harry O. King announced that two semi-annual dividends of $2 each had been paid upon the A preferred stock during 1942, he thus attempted to divert attention from the artifice by which at that and the previous meeting he had prevented the majority of the ownership of the defendant (i. e. the B and C preferred stocks) from electing a majority of the defendant's board." But here it is to be noted that the complaint does not state *facts* as to whether the dividends on the Class A stock could or should have properly been paid prior to the default. The only allegation is that the dividend was "wrongfully" not paid.

The complaint further states that King is being paid an excessive salary as president, about $18,000 a year, and that the total administration expenses of the corporation are entirely out of proportion to its gross and net income. But here again the complaint does not state what the reasonable salary and expenses should have been or what services King does or does not perform as president; in short it does not state facts from which it reasonably can be inferred that the salaries are necessarily excessive, except by inference by comparison with the profits of the corporation. The complaint also alleges that King has been buying up Class C stock in large amounts at $2 to $3 per share while it is said its liquidating value at the present time is much more than this, about $16 per share; and also that King bought his Class

A stock at about $20 per share. The relevancy of these particular facts does not appear with respect to the relief now asked.

When analyzed, the facts (apart from conclusions and charges of fraud not particularized as to facts) which are relevant to the relief prayed are substantially as follows:

1. In 1939 King purchased a majority of Class A shares and upon the resignation of the then president, Munson, was elected president of the Munson Line.

2. Prior to the next stockholders meeting King wrote a letter to all the stockholders outlining the status of the affairs of the corporation, seeking proxies for the next stockholders meeting. There were no misrepresentations of fact in this letter. King also had another solicit proxies for which, the complaint alleges, misrepresentations were made, but without statement of what they were.

3. At the stockholders meeting King's stock plus the proxies obtained represented a voting majority of all stock of all classes and a board of directors nominated by or friendly to King was elected, and the stockholders voted to discontinue the shipping business, sell the remaining ships and authorized the board of directors to invest the proceeds.

4. Acting on the authority so given by the stockholders the board through King authorized and made investments of over a million dollars, being more than 50% of the liquid assets of the corporation, in certain securities one of which it is alleged has caused a loss of $20,000. The largest investment was made to acquire the majority shares of stock of the Brockway Motor Company, a manufacturer or builder of automobile trucks. As a result of this King was elected president of the Brockway Motor Co., and the complaint states he obtains a salary in that capacity. The amount of the salary and the services performed are not stated in the complaint.

5. King has continued to be president of the Company with a friendly board of directors to the present time. The complaint does not state facts regarding the annual stockholders meeting of 1940 or 1941, but the complaint does allege that at the stockholders meeting of 1942 there had occurred a default at the time of payment of the cumulative accrued dividend on the Class A stock, as a result of which the voting power shifted so that the Class A stock of which King held a majority, was authorized to and did elect a majority of the board of directors; and the minority elected by the Class B and C preferred stockholders was also nominated by or was friendly to King. The bill alleges that this shifting of the voting power was due to the "wrongful" delay in paying the dividends. Here again the facts constituting the wrong are not stated. There are the same allegations with regard to the 1943 stockholders meeting.

6. The complaint also alleges, as a conclusion of law, that the abandonment of the shipping business constituted an abandonment of the whole corporate enterprise.

7. Another allegation of the complaint, as a conclusion of law, is that the voting power of the Class A stock to prevent a voluntary liquidation of the corporation is a power held in trust for the benefit of the other classes of stockholders and cannot properly and equitably be exercised solely in the interest of the Class A preferred stock.

The substance of the complaint as summarized in the brief of counsel for the plaintiffs is as follows:

1. Domination of the defendant corporation by King.

2. Abandonment of its corporate purposes.

3. Failure of King to liquidate the corporation in the interests of its stockholders.

4. Use of funds constituting over 60% of defendant's assets by investment in speculative securities inuring to the personal benefit of King through the Brockway Motor Company.

5. Loans to officers and directors of the defendant or to associates of King (not particularized); excessive salary paid to King and passing payment of dividends on the preferred stock Class A until after the annual stockholders meetings.

6. Purchase by King and his associates at depressed prices of substantial amounts of other classes of stock.

7. And such domination of the corporation's affairs by King that any appeal by the plaintiffs to the defendant, its directors or stockholders to remedy the situation, would be futile.

As has been noted, it is difficult to determine, merely from reading the complaint, what facts are relevant and what are legally irrelevant to the *particular relief sought*. It has therefore required careful analysis of the complaint to separate the relevant and irrelevant averments. No doubt the complaint as a whole prima facie charges against King personally such selfish mismanagement of the corporation as to warrant some form of relief by injunction or accounting against him personally. But it is to be importantly noted that King is not a defendant in this case and, by reason of the federal statutory venue provisions, cannot involuntarily be made subject to the jurisdiction of this court. The only defendant here is the corporation. It was, however, stated by counsel for the defendant at the hearing on the pending motion to dismiss, that the plaintiffs have sued King personally in Washington, D. C., where it is said he is now residing.

The question of law presented by the motion to dismiss is whether the facts well pleaded make a proper case to grant the relief requested, which is a total or partial liquidation of the corporation. As the jurisdiction of the court in this case is based on diverse citizenship only, the applicable *substantive* law of the State of Maryland must control. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 144 A.L.R. 1487; West v. American Tel. & Tel. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956. The applicable Maryland rule very clearly is that the courts have no authority to interfere with the internal management of a solvent corporation unless there exist facts showing fraud, illegality or ultra vires. Howeth v. Coulbourne Bros., 115 Md. 107, 117, 80 A. 916; Mason v. Supreme Court of Equitable League of Baltimore City, 77 Md. 483, 27 A. 171, 39 Am.St.Rep. 433; Barton v. International Fraternal Alliance, 85 Md. 14, 36 A. 658; Harford Agricultural, etc., Ass'n v. Somerville, 120 Md. 572, 87 A. 937; Murray-Baumgartner Surgical Instrument Co. v. Requardt, 180 Md. 245, 23 A.2d 697. The principal averment of mismanagement by King is with regard to investments of corporate funds. As the corporation is expressly given the charter power to make such investments of its funds, that investment was obviously not illegal or ultra vires; that the investment was unwise or speculative clearly does not constitute illegality or ultra vires. Nor are there any facts sufficiently alleged with particularity to show that it was fraudulent. Apart from the special provisions of the corporate charter, it seems clear enough that a Maryland court of equity would have no power to intervene in this case to take the management of the affairs of the corporation out of the hands of its officers elected by the stockholders by the appointment of a receiver even if that was prayed for in the complaint. Nor should the court order a liquidation of the corporation by distribution of its assets among the stockholders in whole or in part, when such an action would be directly contrary to the express provisions of the Articles of Incorporation which prohibit a dissolution of the corporation and consequent liquidation, without the affirmative vote of a majority of the Class A preferred stock. And likewise it would be directly in the teeth of the charter provisions to require the corporation to redeem the Class C preferred stock held by the plaintiffs, so long as the Class A preferred stock is outstanding—"unless the book value of the net assets of the corporation (applicable to its stock) computed in accordance with accepted accounting principles, remaining after such redemption or purchase shall be at least equal to $1,000,000. So long as any shares of preferred stock Class B shall be outstanding, the corporation shall not redeem or purchase any shares of its preferred stock Class C or common stock". It appears from the complaint that there is a substantial amount of Class B preferred stock still outstanding, and the complaint does not sufficiently show that the book value of the net assets of the corporation, after the prayed for liquidation of the plaintiffs' Class C stock, would be equal to $1,000,000. It cannot be disputed that all the stockholders of this corporation are entitled to insist on these restrictive provisions of the Articles of Incorporation. As the suit is against the corporation alone it would be a violation of the rights of stockholders other than plaintiffs, and King and his associates as stockholders, to apply corporation funds to the redemption of the plaintiffs' stock. It is not alleged in the complaint that these other stockholders are acting in any way fraudulently or in collusion with King and his associates. It necessarily follows that the relief prayed for by the plaintiffs in this case is not within the power of authority of the court to grant under the only facts properly pleaded in the complaint.

■ Counsel for the plaintiffs rely principally on the Tower Hill case in this Fourth Circuit Court of Appeals as authority for the relief prayed for. Tower Hill Connellsville Coke Co. of West Virginia v. Piedmont Coal Co., 33 F.2d 703; Id., 35 F.2d 179; Id., 64 F.2d 817, 91 A.L.R. 648. But the facts of that case were very different from the instant case. There the owners of the common stock (all water) of the corporation were intentionally and ruthlessly dissipating the assets of the corporation to defeat and impair the value of the preferred stock, for the particular benefit of the common stockholders in control of the management, for collateral purposes. It was an exceptional and extraordinary case in which the court concluded the broad equity powers justified under the particular facts the liquidation of the corporation as the only means to preserve the right of the *senior* stockholders. But here the reverse is the case. The Class A stock is the senior stock and the present policy of the defendant corporation is to favor that stock in accordance with its charter preferred rights. The liquidation of this corporation would defeat these preferred rights, not preserve them. It is said the present continued management will further diminish the value of the plaintiffs' Class C preferred stock, but this is only a matter of wisdom of management. King and his associates do not control the majority of Class C preferred stock. That he is buying it at less than its present alleged book value does not violate any rights of the Class C stockholders. They are at liberty to protect their rights in the management by their votes, and if the majority see fit to give their proxies to King, they cannot complain of the management which they could correct at will by a called meeting of the stockholders in accordance with the local corporate law. It is said in the complaint that the voting power on their stocks for the majority of the board of directors has shifted by the "wrongful" delay in the payment of dividends on the Class A preferred. If the present management is responsible for that particular wrong it can be corrected by an appropriate judicial proceeding on facts sufficiently pleaded and proved, by injunction or otherwise; but that is not the relief here requested.

■ The applicable Maryland corporation law is well settled. Courts of equity have no inherent power to dissolve corporations. Miller, Maryland Equity Jurisprudence, § 642; Brune, Maryland Corporation Law, § 217, pp. 306–307; Howeth v. Coulbourne Bros. Co., 115 Md. 107, 115, 80 A. 916. Maryland statutes have authorized the courts to dissolve corporations in two classes of cases only (other than forfeiture by direct action of the State): in cases of insolvency by section 97 of Art. 23 of the Maryland Code, or by voluntary dissolution under authority of sections 93, 94, 98 of Art. 23 of the Maryland Code. Prerequisites to voluntary dissolution are (a) resolution by a majority of the whole board of directors (b) approval by two-thirds of the stock, followed by a petition in the name of the corporation with an inventory of the assets and liabilities, a list of the stockholders and publication of notice. And it is generally held that as the court may not directly dissolve the corporation, other than on particular statutory authority, that should not be accomplished by indirection by the appointment of a receiver except possibly in very extraordinary cases. Miller, Equity Jurisprudence, § 642; Mason v. Equitable League, 77 Md. 483, 27 A. 171, 39 Am.St. Rep. 433. An individual stockholder has no right of action for depression in value of his shares by the misconduct of officers and directors. His right of action is a "secondary" or derivative stockholders bill for the benefit of all. Miller v. Preston, 174 Md. 302, 313, 199 A. 471; France, Principles of Corporation Law, 2d Ed., p. 107; Federal Rules of Civil Procedure, Rule 23(b). A court has no power to authorize a reduction in stock by paying off particular stockholders out of capital assets. Stock reductions must be made in accordance with the generally applicable statute. Maryland Code, Art. 23, § 32.

■ Counsel for the plaintiffs contends that the Maryland law is inapplicable because it is only of a procedural nature, and cannot impair the general equity powers of a federal court, and therefore Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 144 A.L.R. 1487, which controls only in substantive law matters, does not apply. Tower Hill v. Piedmont Coal Co., supra; Securities and Exchange Commission v. Fiscal Fund, D.C., 48 F.Supp. 712; Black & Yates v. Mahogany Ass'n, 3 Cir., 129 F.2d 227. For the purposes of this case we may assume this to be true, at least to the extent that federal equity may liquidate a corporation, despite inadequacy of

remedy therefor by state law, where that is the only remedy to effectively preserve property rights of stockholders. But I do not think the well pleaded facts of the complaint make such a case.

I appreciate quite fully that a complaint should not be dismissed on motion if, taking its well pleaded facts for granted, there is any proper basis for the relief prayed for. I also have very definitely in mind that the whole picture presented by the averments of the complaint present a case of very selfish management of the corporation in the personal interests of the present president, and also possibly prima facie show mismanagement by him personally, particularly in the alleged excessive salary in proportion to the net profits of the corporation under his management. It is also fairly apparent from the bill as a whole that some form of relief could be granted by equity with respect to some of the alleged mismanagement in suits involving necessary parties. But the difficulty that I have with the complaint is that it has brought together in one complaint averments most of which are not relevant at all to the particular relief requested, and many of the features of the mismanagement alleged could only properly be adjudicated by a court where others in interest are made parties to the case. Here the only defendant is the corporation itself, but the relief prayed for necessarily involves the rights of other stockholders who are not made parties either as plaintiffs or as defendants. Many of the allegations of mismanagement made against King can properly be adjudicated only in a suit to which he is a party, and by plaintiffs suing not for their own particular individual benefit but for the benefit of other stockholders as a class. Such a suit has in fact been brought by these plaintiffs in the District Court for the District of Columbia, Civil Action No. 20126, and it is said that the defendant corporation in this case was served with process in that suit in Maryland on June 14, 1943. See also Baltimore, C. & A. R. Co. v. Godeffroy, 4 Cir., 182 F. 525, 534, 536.

The plaintiffs' principal basis for the relief asked in this suit against the defendant corporation alone, without the joinder of other interested parties either plaintiff or defendant, seems to be the contention that the corporate purposes have entirely failed and therefore the corporation should be liquidated. This contention ignores the corporate purposes as expressed in the Certificate of Incorporation and also directly involves the rights inter sese of other stockholders who are not made parties. The liquidation of the corporation would also apparently importantly impair the charter rights of the Class A preferred stockholders. I therefore see no proper basis for the attempt to adjudicate in this suit the right of the plaintiffs to secure the relief which they ask. It is possible that the plaintiffs may wish to amend and thoroughly revise the present complaint. If so, a proposed amendment can be submitted for consideration. But any such amendment should carefully comply with the rules of federal procedure above referred to, and the facts alleged should be only those which are directly relevant to the particular relief which is requested in the amended bill.