JOHN R. GORDON, et al.

v.

H. F. GRAHAM

(No. 10463)

Submitted September 3, 1952. Decided November 18, 1952.

*Ambler, McCluer & Davis,* for plaintiff in error.

*Pennybacker & Crofton, C. William O'Neill,* and *E. B. Pennybacker,* for defendants in error.

BROWNING, JUDGE:

This is a proceeding by notice of motion for judgment, filed in the Circuit Court of Wood County, by John R. Gordon and William H. Dick, plaintiffs, against H. F. Graham, defendant, in which the plaintiffs seek to recover the sum of $16,129.00 for the alleged breach of a parol agreement between the parties. The defendant filed a counter-affidavit and plea of the general issue, and the case proceeded to trial before a jury. The jury returned a verdict for the plaintiffs in the full amount sued for, a motion by the defendant to set aside the verdict as contrary to law and evidence was overruled by the court and judgment entered thereon.

The plaintiffs and the defendant were residents of Wood County, and the former, in the year 1946, conceived the idea of going into the frozen food and cold storage business. These men made some investigation of this type of business in other localities, and secured an option on a tract of land near the City of Parkersburg on which they

planned to construct a building in which to install their business. The plaintiffs then conferred with the president of the Commercial Banking and Trust Company of Parkersburg with reference to securing sufficient capital with which to begin their enterprise. It is not clear from the evidence whether their application for a loan of approximately $50,000.00 was turned down or not acted upon by the bank, but it is clear that at about that time Mr. Allender, the president of the bank, suggested a meeting between the plaintiffs and the defendant, which meeting was held at Mr. Allender's home.

The defendant Graham had, a short time prior to this meeting, purchased the Kesterson Ice and Storage Company of Parkersburg, and it was suggested that the plaintiffs purchase shares of stock in this established company rather than attempt to form a new competing business. In December, 1946, the plaintiffs agreed to purchase five hundred shares of the outstanding fifteen hundred shares of stock of the Kesterson Ice and Storage Company from the defendant at an agreed consideration of $50,000.00. The plaintiffs paid Graham for the stock by delivering to him $12,000.00 in cash, giving him a note for $3,000.00, and by borrowing an additional $35,000.00 at the Commercial Banking and Trust Company by giving a note, signed by themselves and their wives, which note was endorsed by the defendant and further secured by pledging the five hundred shares of stock.

The defendant Graham became the president of the corporation; the plaintiff Gordon became the vice-president and sales manager; and the plaintiff Dick became the treasurer and superintendent of the plant. The defendant Graham was to be paid $50.00 a week, and the plaintiffs $75.00 each weekly for their services to the company.

In September, 1948, Charles E. Patterson was employed as manager of the plant, and apparently placed in full charge of all operations. There is some conflict in the evidence as to the plaintiff Dick agreeing to this procedure,

but shortly after Patterson was installed as manager, the plaintiff Gordon left the services of the company, either voluntarily or by being discharged. The plaintiff Dick continued in the employment of the company until about February, 1949.

The plaintiffs ceased to make payments upon the $35,000.00 note during the latter part of 1948, and early in June, 1949, the Commercial Banking and Trust Company foreclosed upon the collateral which they held as security therefor, and after proper notice sold the five hundred shares of Kesterson Ice and Storage Company stock, and the defendant Graham purchased the same for the amount still owing to the bank on the note. The plaintiffs were notified of, and represented by counsel at, the sale.

The plaintiffs' notice alleges that on or about the _____ day of October, 1948, the defendant agreed to pay to the plaintiffs the sum of $16,129.00, that amount constituting the $12,000.00 originally paid to the defendant by the plaintiffs; nineteen monthly payments of $200.00 each made to the bank or the sum of $3,800.00; interest on the $12,000.00 from the date of delivery in the sum of $1,400.00; interest on the $3,800.00 payments made to the bank in the sum of $285.00; making a total of $17,525.00. The plaintiffs claim that the defendant made payments under the terms of this agreement in the sum of $1,396.00, leaving a balance due the plaintiffs in the amount of $16,129.00.

The notice further alleges that on or about the _____ day of September, 1948, differences arose between the plaintiffs and the defendant respecting the conduct of the business and management of the said corporation, and that shortly thereafter the plaintiffs terminated their employment with the corporation and advised the defendant of their intention and purpose, as minority stockholders in the corporation, of taking legal proceedings to dissolve it under the laws of the State of West Virginia.

The notice further alleges that the parties to this proceeding, desiring to amicably settle their differences, entered into negotiations and that in order to effect the said

purpose and thereby avoid the necessity of legal proceedings, and cost incident thereto, and to preserve the corporate entity, it was mutually promised and agreed that the plaintiffs would terminate all their interest in the corporation, and that the defendant would pay to them the sums of money hereinbefore related.

It is not denied by the defendant that during the latter part of the year 1948, and during the year 1949, cash and personal property to the amount of $1,396.00 were turned over to the plaintiffs, but the defendant maintains that these payments were in the nature of loans rather than payments under the alleged contract as contended by the plaintiffs.

There was a meeting at the Commercial Banking and Trust Company in October, 1948, at which the plaintiffs, the defendant and certain bank officials were present, and at which time there was a discussion of a settlement between the parties. The plaintiffs testified as to other meetings with the defendant, either jointly or separately thereafter, at which they state that the defendant agreed to purchase their stock in the corporation, and to see to it that they did not lose anything by their venture. The officials of the bank who were present at the October, 1948 meeting stated that there was no agreement between the parties as set out in the notice, but that the defendant did state at that time that he did not want the plaintiffs to lose anything as a result of their entering into this business enterprise.

There is no evidence in the record in support of the parol contract alleged in the notice to have been entered into by the parties on the ___ day of October, 1948, or at any other time whereby the defendant agreed to make the payments alleged to the plaintiffs in consideration of their forbearance to institute legal proceedings as minority stockholders to dissolve the corporation. The plaintiffs maintain, and the trial court ruled, that in a motion for judgment proceeding, it was not necessary for the plaintiffs to comply with the technical procedure required in other forms of action at law in this regard.

As it was stated in *Elkhorn Sand & Supply Company* v. *Algonquin Coal Company,* 103 W. Va. 110, 111, 136 S. E. 783: "A proceeding by notice of motion under the statute is an informal proceeding, not in all respects governed by the common-law rules of practice and procedure, and is sufficient if it clearly informs the defendant of the nature of the plaintiff's claim and the object of the suit. * * *" However, we do not believe that the informality of a proceeding by motion for judgment under the statute exonerates a plaintiff from proving the contract which he alleges in his notice. Evidence tending to show a contract, or series of contracts, varying as to consideration and other material elements from that alleged in the notice of motion for judgment, should be excluded.

The evidence adduced by the plaintiffs, when construed most strongly in their behalf, is to the effect that there were two entirely separate and distinct contracts, one, between Gordon and defendant in October, and one between Dick and defendant in December.

There is no contention by the plaintiff Dick that any agreement was entered into between him and the defendant prior to December, 1948. In fact, Gordon testified that at the meeting at the bank in October, 1948, the defendant Graham and his co-plaintiff Dick agreed to buy his interest in the corporation. The plaintiffs jointly owned one-third of the shares of this corporation, and separately each owned one-sixth. Therefore, Gordon, at the time of the alleged agreement in October, 1948, was not the holder of as much as one-fifth of the shares of the corporation as is required under Code, 31-1-81, which provides as follows: "If not less than one-fifth in interest of the stockholders of a corporation desire to wind up its affairs, they may apply by bill in chancery to the circuit court of the county in which the principal office or place of business of such corporation is situated, or, if there be no such office or place of business in this State, to the circuit court of the county in which the other stockholders or members, or any one or more of them, reside or are found, or in which the property of such corporation or any part of

it may be, setting forth in the bill the grounds of their application, and the court may thereupon proceed according to the principles and usages of equity to hear the matter, and, if sufficient cause therefor be shown, to decree a dissolution of the corporation and make such orders and decrees, and award such injunctions in the cause as justice and equity may require: Provided, however, that in any such suit the defendant holders of a majority of the shares of the outstanding stock of such corporation shall have the right to avoid the appointment of a receiver or the dissolution of such corporation by purchasing the shares of stock owned by the plaintiffs at their fair cash value. * * *"

"In a proceeding brought under s. 57, ch. 53, Code, for the purpose of dissolving and winding up the affairs of a corporation, it is a condition precedent to the maintenance of the suit that it be alleged and proved that the persons seeking such dissolution comprise not less than one-third [now one-fifth] in interest of the stockholders of the corporation." *Rainey* v. *Freeport Smokeless Coal and Coke Co.*, 58 W. Va. 424, 52 S. E. 528. Furthermore, it would appear from the earnings of the corporation between the time that plaintiffs bought their stock, and the purchase thereof by the defendant at the sale, that the amount paid for it by the latter was certainly not less than the fair market value of the stock at that time, and there is neither an allegation in the notice nor evidence to the contrary.

In the case of *Steber* v. *Combs,* 121 W. Va. 509, 514, 5 S. E. 2d 420, this Court said:

"* * * It follows the solution of this case lies in the query whether or not there was in fact the settlement of a controversy sufficient to constitute a valuable consideration. * * *

"* * * The settlement of a controversy is a valid consideration only where the controversy has some foundation in fact. 'But if there is no foundation for such claim of liability', said this court in Point 4, Syl., *Davisson* v. *Ford, supra,* 'then the

promise made to settle this assumed liability has no sufficient consideration to sustain it and no suit can be based on such promise.' * * *"

The plaintiffs failed to prove the consideration alleged in the contract set forth in their notice of motion for judgment, and the consideration alleged therein was not a valid one, if it had been proved, to support the individual contracts.

The trial court gave nine instructions offered by the plaintiffs, and refused three of those tendered by the defendant, to which action timely objection was made by counsel for the defendant.

We do not deem it necessary to discuss the instructions in detail in view of what has heretofore been said, but inasmuch as there may be a retrial of this case, either on the present pleadings or otherwise, we think it pertinent to call attention to plaintiffs' Instructions Nos. 4, 7 and 9 given over objection of the defendant.

Instruction No. 4 reads as follows: "The Court instructs the jury that if they believe from a preponderance of the evidence that the allegations of the plaintiffs notice of motion for judgment have been substantially proved then the jury should find for the plaintiffs." It was incumbent upon the plaintiffs to prove the contract alleged in the notice of motion for judgment by a preponderance of the evidence, and the phrase "preponderance of evidence" and "substantially proved" are not synonymous. The jury was informed also by Instruction No. 9 that if the allegations contained in the plaintiffs' notice of motion for judgment have been substantially proved that they should find for the plaintiffs. We believe the giving of these two instructions to be misleading to the jury, an incorrect interpretation of the law applicable to this case, and reversible error.

The trial court informed the jury in Plaintiffs' Instruction No. 7 that if they believe from the evidence that the parties to this action compromised their differences as set forth in the plaintiffs' notice of motion for judgment,

that the said compromise was accepted and acted upon by the defendant, then the defendant is bound thereby. There was no allegation in the notice of a compromise between the parties, the basis of this action being a contract. This also is a binding instruction, and we believe tended to confuse and mislead the jury as to the issues involved.

This Court, therefore, being of the opinion that the plaintiffs have wholly failed to prove the contract alleged in their notice of motion for judgment, that there was no evidence to support the consideration alleged therein, and for other reasons heretofore stated, the judgment of the Circuit Court of Wood County is reversed, the verdict of the jury set aside, and this case remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed;*
*verdict set aside;*
*case remanded.*