900 F.2d 251
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Gary O. EVERETT, Plaintiff-Appellant,
v.
I-NET, INC.; Kaval R. Bajaj; Ken Bajaj, Defendants-Appellees.
Gary O. EVERETT, Plaintiff-Appellee,
v.
I-NET, INC.; Kaval R. Bajaj; Ken Bajaj, Defendants-Appellants.
 Nos. 89-2082, 89-2093.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 11, 1990.
Decided: March 26, 1990.
Rehearing and Rehearing In Banc Denied April 20, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-88-1279-A).
 William Henry Shewmake, Coates and Davenport, Richmond, Va., for appellant.
 Henry St. John Fitzgerald, Reed, Smith, Shaw & McClay, McLean, Va., for appellees.
 Thomas F. Coates, III, Malcolm P. McConnell, II, A. Richard Thorsey, Coates and Davenport, Richmond, Va., for appellant.
 Daniel A. Muser, Karen P. Power, Reed, Smith, Shaw & McClay, McLean, Va., for appellees.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Gary O. Everett appeals from the district court's entry of judgment against him on the motion to dismiss of appellees I-NET, Inc., and Kaval and Ken Bajaj. Everett argues that the district court erred in ruling that he is not entitled to relief under Virginia partnership law or Maryland corporate law. We find that Everett waived his partnership theory before trial. In addition, the factual findings of the district court that Everett was not entitled to relief under Maryland corporate law are not clearly erroneous. We therefore affirm the judgment of the district court.
 
 I.
 
 2
 On Jaunary 6, 1985, Gary Everett, Kaval Bajaj, and Mohan Kapani entered into an agreement in Virginia whereby Everett and Kapani each purchased 24.5% ownership in Information Networks Co., a company previously owned solely by Mrs. Bajaj. She retained 51% ownership in the company. The agreement specified that upon incorporation of Information Networks into I-NET, Inc., Everett would retain ownership in I-NET in the same 24.5% share and would share in the profits at that same rate. No other details concerning incorporation were specified in the agreement. The agreement was also contingent on Everett providing marketing and technical expertise to the company.
 
 
 3
 On February 1, 1985, Everett began work full-time for Information Networks. Unbeknownst to Everett or Kapani, in August of 1985 Mrs. Bajaj incorporated I-NET, Inc. in Maryland and transferred all assets of Information Networks into I-NET. Everett was not given any shares of stock in I-NET at this time, or anything else that would signify his ownership in the corporation. On April 29, 1986, Kapani's interest in I-NET was bought out by the company, leaving Everett and Mrs. Bajaj as the sole owners of I-NET. There is some dispute as to when Everett actually learned that incorporation had taken place. As early as September or October of 1985, he entered into an employee agreement with I-NET and acted as an officer and employee of the corporation, and he saw and used documents containing the corporate name. He protests, however, that he did not understand the significance in the change of the company's name to corporate form and was unaware of the incorporation until at earliest June 1986.
 
 
 4
 According to Everett, after the company's incorporation Mrs. Bajaj entered into a course of conduct intended to exclude him from participation in I-NET's future. He complains among other things that she represented to persons outside the company that she was the company's sole owner, denied him access to the company's books, instructed company employees not to provide him with financial information, refused to give him an accounting of the company's financial status, and engaged in self-dealing by having I-NET enter into a number of transactions with companies owned in whole or in part by herself or her husband.
 
 
 5
 Beginning in June of 1986, Everett and Mrs. Bajaj entered into negotiations concerning what type of ownership and ownership rights he would have in the corporation. These negotiations did not prove fruitful, at least in part because Everett demanded that he be guaranteed such things as a seat on the board of directors, a position as an officer of the corporation, and $100,000 in severance pay should he be fired from his current position.
 
 
 6
 Eventually, Everett filed suit on October 7, 1988, against I-NET and the Bajajs alleging that he was entitled to 24.5% of the corporate shares of I-NET. On October 18, 1988, he moved for a temporary restraining order to prevent Mrs. Bajaj from firing him and from issuing additional stock and diluting his ownership. The temporary restraining order was granted without notice or a hearing. On October 19, 1988, Everett brought a motion for a preliminary injunction and appointment of a receiver. The motion was denied. The temporary restraining order expired by its own terms on October 21, 1988, and Everett was promptly fired. On October 22 and again on October 25, Everett refused I-NET's proffer of a certificate for 24.5% of the common stock.
 
 
 7
 On November 16, 1988, Everett filed an amended complaint in which he sought recovery based on the original partnership agreement of January 6, 1985.
 
 
 8
 The case was tried without a jury on March 20-21, 1989. Prior to trial, appellees conceded that Everett was entitled to 245 shares of stock in I-NET and that he possessed a right of first refusal on the issuance of any stock that would reduce his percentage ownership. At the conclusion of Everett's case-in-chief, appellees stipulated that Everett was entitled to 245 shares of I-NET stock and moved to dismiss the remainder of his claims under Federal Rule of Civil Procedure 41(b). The district court granted the motion.
 
 
 9
 Everett appeals.
 
 II.
 
 10
 Everett contends that the agreement of January 6, 1985, established a partnership under Virginia law between Mrs. Bajaj, Kapani, and himself. He maintains that the corporation, I-NET, is now an asset of the partnership, and that as a partner he is entitled to an accounting of the partnership assets and to dissolution of the partnership and distribution of its assets.
 
 
 11
 We need not address these contentions because we find that Everett waived his partnership theory prior to trial. In a colloquy between Everett's counsel and the district court prior to trial, the district court questioned counsel about the theory of his case. Counsel was unable to give the court a clear response as to the theory of his case or the relief he was seeking. While at times he mentioned a partnership theory, he later stressed only a theory of shareholder oppression under corporate law. At the conclusion of the colloquy, the district court, after attempting to make sense of Everett's counsel's oblique explanation of his case, stated:
 
 
 12
 Well, the only thing relevant in this case is what oppression he has suffered under the corporate status of this organization. That's the only evidence I am going to listen to. And then I am going to listen to your evidence of valuation of the corporation.
 
 
 13
 Everett's counsel acquiesced in the court's statement of his case, never protesting that his partnership theory was being overlooked.
 
 
 14
 Everett maintains that he was unaware that he had waived his partnership theory and only learned that the partnership theory was no longer in the case when the district court granted the motion to dismiss with respect to all counts. This argument is belied by the conduct of Everett's counsel during trial and by his statements in closing argument. While counsel protested several of the court's rulings excluding evidence during trial, never did he indicate that the evidence ought to be admitted in order to prove his partnership theory. Moreover, in excluding evidence as unrelated to the issue of shareholder oppression, the court stated without protest by Everett's counsel that "I thought we determined that the only issue that you are putting on proof about here today is how oppressive the treatment has been to this minority stockholder that would justify some relief." Nor did counsel ever argue during closing argument that Everett was entitled to recover under a partnership theory.
 
 
 15
 In what appears to be an argument in the alternative, Everett also contends that the district court ruled against him on the partnership theory in its statement prior to trial that the shareholder oppression theory was the only theory of relevance to the case. When the district court's statement is read in context, however, it is clear that it was not intended to be a rejection of Everett's partnership theory as a matter of law. Rather, in attempting to divine from counsel's confused explanation a coherent theory of Everett's case, the district court indicated that it believed that the shareholder oppression theory was the only theory presented. Everett's counsel did nothing to dissuade the court from this belief. Thus, in the statements of counsel prior to trial Everett waived any partnership theory he might have had, and he may not raise the issue for the first time at the appellate level. See Singleton v. Wulff, 428 U.S. 106, 120 (1976); Skippy, Inc. v. CPC Int'l, Inc., 674 F.2d 209, 215 (4th Cir.1982).
 
 III.
 
 16
 Everett also maintains that the district court erred in refusing to dissolve the corporation in accordance with Maryland Code Sec. 3-412(b)(2). That section of the Maryland Code provides that any shareholder entitled to vote may petition a court of equity to dissolve a corporation on grounds that "[t]he acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent." Everett contends that he was oppressed by Mrs. Bajaj and is therefore entitled to the statutory relief.
 
 
 17
 We disagree. Everett ignores the fact that the district court heard the evidence he presented and made a factual finding that there was no fraudulent or oppressive conduct on the part of Mrs. Bajaj. The court stated that "[t]here is no evidence at all that this corporation engaged in any illegal activity. There also isn't any evidence that there [were] any fraudulent or oppressive acts." There is nothing to lead us to believe that the factual findings of the district court were clearly erroneous. The mere allegations of improper conduct made by Everett during his testimony are insufficient to establish fraud or oppressive conduct.
 
 
 18
 Much of the conduct on the part of Mrs. Bajaj of which Everett complains, such as awarding herself a large salary and placing him in an isolated office, was a matter of internal corporate management. In Lynch v. Buchanan, 377 A.2d 592 (Md.Ct.Spec.App.1977), the Maryland Court of Special Appeals stated:
 
 
 19
 "Nothing connected with the normal internal disputes between the shareholders is to be made the subject of a bill by some one shareholder in behalf of himself and others, unless there be something illegal, oppressive or fraudulent--unless there is something ultra vires on the part of the company, qua company, or on the part of the majority of the company, so that they are not fit persons to determine it."
 
 
 20
 Id. at 595 (quoting Williams v. Ice Co., 3 A.2d 507, 513 (Md.1939)). Similarly, in Toner v. Baltimore Envelope Co., 498 A.2d 642 (Md.1985), the Maryland Court of Appeals noted:
 
 
 21
 "[W]e acknowledge the fact that the controlling group in a close corporation must have some room to maneuver in establishing the business policy of the corporation. It must have a large measure of discretion, for example, in declaring or withholding dividends, deciding whether to merge or consolidate, establishing the salaries of corporate officers, dismissing directors with or without cause, and hiring and firing corporate employees."
 
 
 22
 Id. at 653 (quoting Wilkes v. Springside Nursing Home, Inc., 353 N.E.2d 657, 663 (Mass.1976)). Thus, even if the district court had not found as a factual matter that there was no evidence of fraud or oppression, we think that most if not all of the actions of which Everett complains would not constitute shareholder oppression.
 
 IV.
 
 23
 The Bajajs and I-NET cross-appeal, arguing that the district court erred in refusing to grant sanctions against Everett and his attorneys for violation of Rule 11 of the Federal Rules of Civil Procedure. They assert that Everett violated Rule 11 by making false factual representations and by forwarding groundless substantive claims.
 
 
 24
 This argument is without merit. Our review of a district court's decision not to impose sanctions is governed by the abuse of discretion standard. See Stevens v. Lawyers Mutual Liability Ins. Co., 789 F.2d 1056, 1060 (4th Cir.1986). Here, appellees' complaints of false factual representations center on discrepancies among Everett's initial complaint, his amended complaint, and other motions he filed with the court. However, the representations made by Everett have both a factual and a legal component, and could fairly be considered arguments in the alternative. Moreover, not every claim which fails to persuade a court is a groundless one deserving of Rule 11 sanctions. The district court clearly did not abuse its discretion in declining to impose Rule 11 sanctions in this case.
 
 V.
 
 25
 For the foregoing reasons, the judgment of the district court is
 
 
 26
 AFFIRMED.