# CHARLESTON.

ROBINSON *et al v.* FAIRMONT TRUST CO. *et al.*

(No. 6453)

Submitted April 22, 1930.   Decided May 6, 1930.
(Rehearing Denied July 16, 1930.)

· *C. Brooks Deveny* and *Harry E. Watkins,* for appellants.
*Victor H. Shaw,* for appellees.

LIVELY, PRESIDENT:

The decree of January 4, 1929, appealed from, dissolved a temporary injunction restraining a trustee's sale of the property of the Columbia Glass Company, and held that two notes aggregating $8,500 held by C. D. Robinson, M. A. Fletcher, and Glenn F. Barnes, appellants herein, executed by said glass company to Antonio Scalise for purchase of stock of said glass company, and by him assigned to them for value, had been paid by the glass company.

The notes originated in this way:   On May 31, 1924, the glass company purchased from Scalise 995 shares of its common stock owned by him for $40,000, and delivered to him ten negotiable promissory notes each for $4,000 dated that date, one · payable each year over a period of ten years, and secured payment by a trust deed on its plant to Fairmont Trust Company,

trustee. The corporate seal of the glass company was not attached to the deed, which deed was duly recorded. One of the questions for decision involves the failure to attach the corporate seal to the trust deed. Appellants were the principal stockholders in the glass company. When the first deferred note became due, the glass company could not pay it. Scalise had pledged that note as collateral to the Monongahela Bank, whereupon appellants each paid to the bank $1,333.33 and the note was delivered to them. The glass company had paid the interest to its due date, May 31, 1925. Later, the glass company issued to each appellant preferred stock in payment of the money so paid out by them. The glass company has therefore in reality paid this note, and appellants cannot look to the deed of trust for another payment to them.

The next note was paid at maturity by the glass company. When the third note became due, May 31, 1927, the glass company was unable to pay it, and Scalise threatened foreclosure. Appellants say they refuse to advance any more money for the glass company and proposed to purchase from Scalise that note. On June 4, 1927, the following notation was written on the back of the note: "The within note assigned this day to Clarence D. Robinson, M. A. Fletcher and Glenn F. Barnes," and was signed by Scalise. Robinson thereupon issued his checks to Scalise for $4,240, and the note was delivered to appellants. Scalise says he cannot read or write and claims that he understood that the glass company was paying off its note. The interest on the seven notes remaining unpaid was also paid at that time by appellants. When the fourth note became due on May 31, 1928, the glass company was again unable to pay. This note, and the other six not yet due, had been pledged by Scalise as collateral to the Florida National Bank, which bank directed the trustee to sell under the trust deed which secured their payment; and thereupon appellants filed their bill at November Rules, 1928, to enjoin the trust sale, to ascertain and fix the priority of payment of the holders of the notes (themselves holding two, and the Florida Bank holding seven), to ascertain the debts owing by the glass company, including the amount due to Monongahela Bank secured by a deed of trust on the same property of date prior to the Scalise trust

deed, and for correction of the defect in the title of the Fairmont Trust Company, trustee (the lack of the corporate seal to the trust deed), before sale, and for general relief. A temporary injunction against the sale was awarded on presentation of the bill in vacation on October 29, 1929. Scalise moved to dissolve on November 17th, supporting his motion by his affidavit; plaintiffs filed counter affidavits, and the court continued the hearing until November 24th, at which time Scalise tendered his answer. The court overruled the motion to dissolve, there being a substantial controversy over the ownership, and status of payment of the two notes, held by plaintiff; overruled demurrers to the bill, and ordered the evidence to settle the controversy over the ownership and status of the two notes held by plaintiffs to be immediately taken in court. Testimony was accordingly begun and was concluded on November 27, 1928. The evidence being transcribed, the case was argued and submitted for decision on December 15, 1928. Later, on December 27, 1928, the Florida National Bank tendered and filed its answer over objection of plaintiffs, to which answer plaintiffs replied generally. On January 4th, following, at a regular term, the decree complained of was rendered.

Prior to the transactions above set out, the glass company property was owned and operated by Scalise doing business as Fairmont Glass Company. He needed money, and Fletcher, Barnes, and a Mr. Hood began financing him by indorsing his paper, and it was finally agreed between them that Scalise would incorporate and protect them by issuance to them of one-third of the capital stock. He incorporated at an authorized capital stock of $150,000, and $50,000 of it was issued to his financial backers and $100,000 to Scalise. The property was deeded to the corporation. Later, Mr. Hood retired from the company and was succeeded by appellant Robinson. The business was not altogether prosperous, and appellants demanded a controlling interest in the stock for protection of their obligations in the company; negotiations therefor resulted in the purchase of Scalise's entire stock for $40,000, secured by deed of trust on the property, as above set out. There was a prior deed of trust on the property to secure a loan made by Monongahela Bank, the balance of which was in excess of $12,000 at

the time the trustee advertised the sale which brought about this injunction suit.

Appellants assign as error: (1) Premature entry of the decree, that is, before the cause had matured for final hearing; (2) in directing sale without having corrected the alleged defect in the trust deed, that is, the lack of the corporate seal of the glass company; and (3) in holding, on the merits, that appellants' note (third of the series) formally assigned to them by Scalise was not in fact an assignment, but a payment to Scalise by the glass company.

We think there is little merit in the first two assignments, both of which are technical. The bill is mainly for an injunction to prevent sale, until the claimed interest of appellants to the notes and the security for payment was adjudicated. They wanted to know whether they would participate in the proceeds of the sale and the dignity and priority of their participation, so they would know how to bid to protect their claim. On that proposition, they had ample opportunity to present, and did introduce, all their evidence. There was a full hearing, argument, and an agreement for submission for decision by all parties to the regular judge, who otherwise would not have heard the cause because of some knowledge concerning it gathered as an attorney before election to the bench. We cannot see how appellants were prejudiced by an expeditious and early hearing. Had the decision on the merits been in their favor, there would have scarcely been complaint. On the second assignment, it appears that before the fourth note became due, Scalise desiring to borrow money from the Florida National Bank tendered to that bank the notes and the deed of trust securing as collateral, when it was discovered that the corporate seal of the grantor glass company had not been impressed on the deed of trust. The trustee on or about August 25, 1927, caused the corporate seal of the grantor to be attached, and the trust deed was again recorded, thus remedying the defect. Neither the glass company nor the trustee could question the validity of the trust deed, and the purchaser under the trust deed sale, properly made, will be safe from that alleged defect in the trustee's title.

There is merit in the third assignment of error. When the

third note for $4,000 became due, May 31, 1927, with interest of $240 accrued thereon, the glass company could not pay it. Robinson had already put about $80,000 into it, Fletcher about $18,000, and Barnes about $32,000 and yet the company was not a success. Naturally they did not want to put in more money. While they were the principal and controlling stockholders, other persons had purchased stock to the amount of about $5,000; and a Mr. W. C. Cole had become president of the corporation. Scalise was pressing for payment of his note and was threatening foreclosure. Appellants concluded that they would purchase the note then due, and stop the foreclosure. They and Scalise met, and according to appellants, they told him that they would purchase the note and talked the whole situation over with him. In his presence, the assignment hereinbefore set out was written and read to him, he thereupon signed it, checks of Robinson (post dated) were delivered to and accepted by him and afterwards paid, and he delivered to them the note. This note with the indorsement thereon was later filed with the trustee. Scalise says he cannot read or write (although there is evidence that he could do both), and denies that he was told by appellants that they were purchasing the note for themselves. He says that if he had known the legal effect of the assignment he would not have assigned the note to them, but would have insisted on foreclosure. Wherein was he hurt? He obtained the value of that note in full. Here, we have the unqualified statement of the three appellants that they informed Scalise they were purchasing, and not paying the note for the glass company, buttressed by the writing itself which is clear and unequivocal. The preponderance of the evidence is very much in favor of appellants, and the circumstances under which the transaction was had point to a confirmance of their averments that they were buying the note for themselves instead of paying for the glass company. It may be that Scalise was not told of the legal effect of that purchase, namely, that the purchase would carry with it the security, and if a future sale was had under the trust, appellants would participate in the proceeds. He might not have assigned had he known the legal effect of the assignment; he says so in his evidence; but a mistake as to the legal effect

of his act cannot relieve him from the legal consequences of that act in the absence of fraud, deception, or misrepresentation on the part of appellants. There is no suggestion of fraud, deception, or misrepresentation here charged. A mistake in law, where there is neither fraud, concealment, nor mistake of fact, affords no ground for relief in equity against a contract which is clear and unambiguous. *Zollman* v. *Moore,* 21 Grat. (Va.) 313; *Shriver* v. *Garrison,* 30 W. Va. 456, 4 S. E. 660; *Pusey* v. *Gardner,* 21 W. Va. 469. The decree is erroneous in so far as it disallows appellants to participate in the security afforded by the deed of trust to the note purchased and paid for by them.

There is another serious question which arises and which has not been considered by the trial chancellor; and that is, the equities in priority of participation in the proceeds of sale between appellants and the Florida National Bank. Naturally, this question did not arise when the court concluded that appellants had no right to participate in the proceeds of sale; that they had not purchased the note, but had paid it, not as individuals, but as the glass company.

On August 18, 1927, the Florida National Bank, by registered letter, inquired of the trustee, Fairmont Trust Company, as to the amount unpaid to Scalise on the notes secured by the trust deed, as well as the amount owing on the first mortgage. By letter of August 25th, M. A. Fletcher (one of the appellants) answered that letter as vice president-treasurer of the trust company saying that the amount yet owing on the trust was $28,000, and advising that he regarded the physical property of the glass company as sufficient to secure both "mortgages" (the amount on the prior deed of trust being about $12,000). On this information (and upon the seal of the glass company being attached to cover the defect in the trust deed), the Florida National Bank took the seven remaining notes as collateral to a loan made Scalise of $8,500. Mr. Fletcher frankly admits that he made a mistake in stating in substance that the note purchased by appellants was not secured by the deed of trust. But on this information, the bank made its loan. While Fletcher was representing the trust company, it may be that he has created an equity in the favor of the bank superior

to that of himself and his associates, which would entitle th'at bank to a preference in the proceeds of sale over that of appellants. On this question, we express no opinion, but will remand the cause for the purpose of having the equities determined as between appellants and the bank, and when that is done, the injunction should be dissolved and the property sold by the trustee, and the proceeds distributed accordingly.

*Reversed in part; remanded.*