FRANK DANCHATZ *et al.* v. PAGE COAL & COKE COMPANY

(No. 6889)

Submitted February 24, 1931. Decided March 3, 1931.

*Harman & Howard,* for plaintiffs in error.
*Strother, Sale, Curd & St. Clair,* for defendant in error.

WOODS, JUDGE:

This action of trespass on the case was instituted by Frank Danchatz and Mary Danchatz, father and mother of Joe Danchatz, against the Page Coal & Coke Company, to recover for loss of services occasioned by the wrongful act of the defendant, resulting in the loss of the right hand and a portion of the right forearm of the said Joe Danchatz, their infant son. The court directed a verdict for the defendant, and this writ of error is prosecuted from the judgment rendered upon the same.

It is alleged in the declaration, and the proof tends to show, that Joe Danchatz, then a youth of 15 years and 20 days, at the request of the general manager and operator of the defendant's steam saw mill, undertook, without compensation, to assist in the placing and holding of a heavy block of wood in contact with a fast revolving circular saw; that the danger of such an undertaking, owing to the youth and inexperience of the youth, was obvious to the defendant, yet no precaution against such risk in the way of warning, instruction or guidance or otherwise safeguarding him from coming in contact with the saw was given or taken by the defendant; and that as a proximate result thereof the right arm of the youth came in contact with and was severed by the saw.

The defendant, in addition to the general issue plea, over the objection of the plaintiff, was permitted to file two special pleas, setting up an accord and satisfaction and alleging that the plaintiff, Frank Danchatz, had executed a written release in satisfaction of any and all claims whatsoever he had against the defendant on account of or growing out of the accident complained of in the declaration. The release referred to and introduced in evidence, omitting the signature and seal of Frank Danchatz, is as follows: "Know all men by these presents: That Frank Danchatz in *his own right* and as guardian for Joe Danchatz, an infant under the age of twenty-one years, hereby acknowledges the receipt of $10,000.00 from the Page Coal and Coke Company, a corporation, in full settlement, discharge and satisfaction of that certain judgment recovered by Joe Danchatz, an infant under the age of twenty-one years, who sues by his next friend, Frank Danchatz, against the Page Coal and Coke Company, a corporation, pending in the Circuit Court of McDowell County, West Virginia, which judgment was rendered on the 2nd day of December, 1929. And said sum of $10,000.00, receipt of which is hereby acknowledged, shall be and constitute full release, discharge, and satisfaction of all claims of any kind whatsoever, in law or in equity, of the said Frank Danchatz, *in his own right and as guardian of said Joe Danchatz, an infant, on account of injuries sustained, accrued and to accrue from an accident occurring to the said Joe Danchatz*

while he was working about a certain saw of the Page Coal and Coke Company, on or about the 21st day of March, 1929, and the said Frank Danchatz in his own right and as guardian for the said Joe Danchatz hereby releases, discharges and forever quits claim unto the said Page Coal and Coke Company, a corporation, all claims of any kind whatsoever accrued or to accrue to them *by reason of or in connection with said accident.*" (Italicized words ours.)

The plaintiff met the two special pleas by a special replication wherein it was stated that the father in executing such release was led by the defendant and its agents to believe and understand that he was signing and executing a release only as to the claim of the infant son against the defendant for the injury; and that, in so far as it purported to be in accord and satisfaction in his own right and as to his own claim, it was the result of fraud and deception practiced upon him by the defendant and its agents. Thus were raised two questions for decision: (1) was the special plea of accord and satisfaction sustained? and (2) if not, was the injury of the infant son of the plaintiff's the proximate result of the negligence of the defendant?

According to the brief of the appellant, the court based its act in directing a verdict upon the impression that the release introduced in relation thereto, was intended to be in satisfaction of the claim sued on as well as in satisfaction of the claim of the son for the injury sustained by him. The defendant to meet the issue of the special plea introduced in evidence the fact that a previous suit had been instituted by the father as next friend of the injured youth against the defendant for damages for the injury sustained by him. This case regularly went to trial upon the general issue, whereupon there was an agreed verdict rendered by the jury for $10,000.00. The attorney for the plaintiff in that suit testified in effect that he tried to make it clear that the company wanted to be released of all liability growing out of the accident; however, that he didn't recall that he had explained to them or so stated in exact words that he was entitled to a claim against the company for loss of services, but he does say that he on several occasions "explained that the company

had made several different offers, and that the offer was in settlement of any liability that the company had out of the accident.'' To this the plaintiff rejoined by claiming that the attorney was only employed to look after and represent the claim of their son against the company, and nothing was said to them by him as to their own claim for loss of services.

An examination of the receipt shows in plain and unmistakable language that the father "in his own right and as guardian" for the infant, did release any damages accruing to him "by reason of or in connection with said accident." Back as far as *Hoke* v. *Hoke*, 3 W. Va. 561, it was held: "There is no exception to the rule that the fair and voluntary execution of a sealed instrument is conclusive against all who seal it of everything admitted in it.'' It could only be overthrown by showing that it was executed by reason of fraud and deception practiced upon the maker by the person benefitting by its plain terms. The evidence of fraud in such cases must be clear, precise and indubitable, otherwise the case must be withdrawn from the jury. A mere scintilla of evidence is not sufficient to take the case to the jury. Since parties are allowed to testify on their own behalf, it has become still more necessary that this important rule should be strictly adhered to and enforced. *Railroad Company* v. *Shay,* 82 Pa. St. 198. True, father and mother, plaintiffs here, are of foreign birth and comprehend but slightly the English language. The attorney who represented them in the former suit is an experienced lawyer. Taking the statements of the father and mother in their most favorable light, nothing seems to have been said between them and their attorney about the liability of the company to them for the loss of services of their son. So far as their action is concerned, it seems merely to be an afterthought. It would have been an unwise act of the defendant company to have confessed judgment for the $10,000.00 unless it was supposed to end all litigation growing out of the accident. The attorney for the father and mother negotiated the compromise with the same thought in view. The agreement entered into prior to the institution of the suit which resulted in the compromise between the attorney and the father supports the con-

tention of the attorney. He was employed to institute suit for injury sustained by the son "as a result of the said accident." By this instrument the attorney agreed to use his best efforts to effect a compromise without suit or trial. In the light of the entire setting of the case, we cannot say that any fraud or deceit has been practiced upon the father to secure his signature to the release. But, was there lack of consideration so far as the father was concerned? The contract of release was under seal. In *Bloss* v. *Plymale*, 3 W. Va. 405, it was held that the seal imports a sufficient consideration and the party cannot avoid it upon the ground of want of consideration. We are not unmindful of the effect of our statute later enacted concerning the use of seals in contracts. Acts 1921, chapter 71, sections 1, 2, 3 and 4. Again, a compromise of a controversy is a valuable consideration to sustain a contract. *Rutherford* v. *Rutherford*, 55 W. Va. 56.

But, it does not bind the mother, says the appellant. Code, chapter 82, section 7, provides: " * * * but the father or mother of such minor shall be entitled to the custody of the person of such minor, and to the care of his education. And the father and mother of such minor, if living together, shall be the joint guardians of their minor child or children, with equal powers, rights and duties in respect to their custody, control and of the services and earnings of such minor child or children; and neither the father nor the mother shall have any right paramount to that in respect to the custody, control, services or earnings and care of the education of said minor children." Notwithstanding any proper interpretation of the aforesaid statute, the law still makes the father liable for the support of his child to the exclusion of the mother. The quoted statute must have intended only to provide for a joint control and custody of the child. Since women have been accorded the franchise upon equal terms as men, this statute has been enacted, as well as the one defining the curtesy of the husband, to carry out the purposes of equal rights. The reason of its enactment must be considered in this light. So considering it, may we not conclude that the object of this particular statute was to provide for the disposition of the earnings of infant children in case of

a dispute between the parents in matters of domestic relations. But, admitting that the parents have joint rights to the earnings of the child, does not the release by one of the parents release the rights of the other also? The great weight of the authority seems to hold that it does. In 34 Cyc. 1080, the rule is stated to be: "A release by one of two joint obligees is in law a discharge by both." Again, we have held that at common law a release of one or more joint debtors or joint and several debtors releases all, because the debt is entire, and when released can no longer be enforced against a party to it. *Rutherford* v. *Rutherford, supra; Maslin* v. *Hiett,* 37 W. Va. 15. The authorities go so far as to say, although the instrument of release expressly reserves the right against all the debtors other than the releasee, it is operative against all, because such a purpose is repugnant to the nature of the instrument. The law makes no distinction as to this rule between joint obligees and joint tort-feasees. Our statute, section 7, chapter 136, Code, does not purport to make any change in the common law rule regarding releases on the part of the joint obligees and joint tort-feasees. The fact that the father qualified as guardian and accepted money as such binds the mother so far as third persons are concerned. But aside from the strict legal question of release, the evidence shows that the mother was one of the parties treated with at the time of the execution of the release by the father, and that it was not executed until her consent was obtained.

So we must hold that the court committed no error in directing a verdict. Such holding makes unnecessary a consideration of the other question of proximate cause.

The judgment of the lower court is affirmed.

*Affirmed.*